UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CARLOS CALIX ET AL.                              CIVIL ACTION

VERSUS                                           NO. 14-2430 c/w 15-3622

ASHTON MARINE LLC ET AL.                         SECTION "K" (2)

**REPORT AND RECOMMENDATION**

This is a conditionally certified collective action for unpaid overtime wages under the Fair Labor Standards Act ("FLSA").  29 U.S.C. § 201 et seq.  The presiding district judge approved the parties' settlement agreement, Record Doc. No. 103, and entered judgment in favor of plaintiffs and against defendants, Ashton Marine, LLC, Ashton Boat Construction, LLC[1] and Paul M. Boudreaux (collectively "Ashton Marine" or "defendant"), awarding a specific amount to each of the six named plaintiffs, "plus attorneys' fees and costs as provided for under the [FLSA]."  Judgment, Record Doc. No. 105 at p. 1.

The presiding district judge referred to me for findings and recommendation plaintiffs' Motion for Attorney's Fees, Record Doc. No. 104,[2] and the question of "the proper amount of attorney fees to be awarded."  Record Doc. No. 105 at p. 2.  Plaintiffs

---

[1] Plaintiffs previously dismissed Ashton Boat Construction, LLC voluntarily.  Record Doc. Nos. 8, 13.

[2] Plaintiffs filed their motion seeking attorney's fees and costs before the court entered judgment. The final judgment referred plaintiffs' application for costs to the Clerk of Court pursuant to Local Rule 54.3.  Record Doc. No. 105 at p. 2.  Plaintiffs then filed a Bill of Costs, Record Doc. No. 113, and the Clerk entered an order taxing costs against defendants.  Record Doc. No. 115.  Accordingly, I do not address plaintiffs' request in their motion for costs.

seek an award of $145,770.00 in fees for 485.9 hours of attorney time. They also argue that this amount should be adjusted upward because of their degree of success.

Ashton Marine filed a timely opposition memorandum. Record Doc. No. 112. Defendant does not dispute that plaintiffs are prevailing parties entitled to recover their reasonable attorney's fees, but argues that (1) plaintiffs seek fees for legal work done after January 5, 2016, despite an alleged agreement that they would not seek recovery of any fees incurred after they settled their overtime claims; and (2) both the hourly rates and the amount of hours billed by plaintiffs' counsel are excessive and unreasonable.

I.   STANDARDS FOR AWARD OF ATTORNEY'S FEES

The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Reasonable attorney's fees are mandatory when a court finds that an employer has violated [29 U.S.C.] § 206. . . . "[T]he district court has discretion to determine what is reasonable." Steele v. Leasing Enters., Ltd., No. 15-20139, 2016 WL 3268996, at *7 (5th Cir. June 14, 2016) (quotation omitted) (citing Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 800 (5th Cir. 2006)).

The lodestar method is routinely used to determine attorney's fee awards in federal actions and applies in this case brought under a federal statute. Collective actions under the FLSA are often treated like class actions for settlement purposes. Ruiz v. McKaskle, 724 F.2d 1149, 1152 (5th Cir. 1984); Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir.

2

1977); In re Beef Indus. Antitrust Litig., 607 F.2d 167, 179 (5th Cir. 1976); Liger v. New Orleans Hornets NBA Ltd. P'ship, No. 05-1969, 2009 WL 2856246, at *2 (E.D. La. Aug. 28, 2009). The Fifth Circuit "requires district courts to use the 'lodestar method' to assess attorneys' fees in class action suits." In re High Sulfur Content Gas. Prods. Liab. Litig., 517 F.3d 220, 228 (5th Cir. 2008) (emphasis added).

Ashton Marine contends that the court should apply the "percentage method" as a double-check against the lodestar method and should award plaintiffs only a small percentage of the total settlement amount as a reasonable attorney's fee. However, as the cases cited by Ashton Marine demonstrate, the percentage method is generally used when attorney's fees will be drawn from a common fund settlement. Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 729 (E.D. La. July 9, 2008); In re Harrah's Ent'm't, Inc., No. 95-3925, 1998 WL 832574, at *4 (E.D. La. Nov. 25, 1998); In re Prudential-Bache Energy Income P'ships Sec. Litig., No. MDL 888, 1994 WL 150742, at *1-2, *4 (E.D. La. April 13, 1994); cf. Lackey v. SDT Waste & Debris Servs., LLC, No. 11-1087, 2014 WL 4809535, at *3 (E.D. La. Sept. 26, 2014) (using lodestar and percentage methods to review fairness of FLSA settlement in which defendant agreed to pay plaintiffs a defined amount in attorney's fees). The instant case involves neither a common fund settlement nor an agreement by defendant to pay a certain amount of plaintiffs' attorney's fees.

Reasonableness is the touchstone of any award of attorney's fees.  Altec Capital Servs., LLC v. Weir Bros., No. 3:11-CV-3409-D, 2013 WL 866193, at *5 (N.D. Tex. Mar. 8, 2013); Ill. Cent. R. Co. v. Harried, No. 5:06CV160-DCB-JMR, 2011 WL 283925, at *9 (S.D. Miss. Jan. 25, 2011); Fox v. Vice, 737 F. Supp. 2d 607, 609 (W.D. La. 2010); Life Ins. Co. v. Kreuzer, No. EP-06-CA-173-FM, 2006 WL 3306148, at *2 (W.D. Tex. Nov. 2, 2006); Sandoval v. Apfel, 86 F. Supp. 2d 601, 610 (N.D. Tex. 2000). The lodestar provides "a sound method of assessing the fees," even when, for example, a contract provides for a particular allocation of attorneys' fees, "because the court has the discretion to reduce any award that would be 'inequitable and unreasonable.'"  Int'l Marine, LLC v. FDT, LLC, No. 10-0044, 2015 WL 914898, at *3 (E.D. La. Mar. 3, 2015) (citing Natco Ltd. P'ship v. Moran Towing of Fla., Inc., 267 F.3d 1190, 1196 (11th Cir. 2001); Malin Int'l Ship Repair & Drydock, Inc. v. M/V SEIM SWORDFISH, 611 F. Supp. 2d 627, 635-36 (E.D. La. 2009); Cortes Molina v. TL Dallas (Special Risks) Ltd., 547 F. Supp. 2d 102, 115 (D. Puerto Rico 2008)).

Accordingly, I apply the lodestar method in the instant case.  Under this method,

[t]he determination of a fees award is a two-step process.  First the court calculates the "lodestar[,]" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.  The court should exclude all time that is excessive, duplicative, or inadequately documented.  Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19

(5th Cir. 1974)[, abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)].

Jimenez v. Wood Cnty., 621 F.3d 372, 379-80 (5th Cir. 2010) (citations omitted).

"The lodestar may not be adjusted due to a Johnson factor, however, if the creation of the lodestar award already took that factor into account.  Such reconsideration is impermissible double-counting."  Heidtman v. Cnty. of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992); Shipes v. Trinity Indus., 987 F.2d 311, 319-20 (5th Cir. 1993)); accord Perdue v. Kenny A., 130 S. Ct. 1662, 1669 (2010).

The Johnson factors are:

(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases.

Johnson, 488 F.2d at 717-19.

"[O]f the Johnson factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel."  Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998) (citation omitted).  Three of the Johnson factors, complexity of the issues, results obtained and preclusion of other employment, are presumably fully

5

reflected and subsumed in the lodestar amount.  Heidtman, 171 F.3d at 1043 (quoting

Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986);

Shipes, 987 F.2d at 319-22 & n.9).  After Johnson was decided, the "Supreme Court has

barred any use of the sixth factor," whether the fee is fixed or contingent.  The  Johnson

factors are taken into account after the court has determined the lodestar amount.  Walker

v. U.S. Dep't of Housing & Urban Dev., 99 F.3d 761, 772 (5th Cir. 1996) (citing City of

Burlington, 505 U.S. at 567).

    The Supreme Court recently reiterated that "there is a strong presumption that the

lodestar is sufficient" and that "an increase is permitted [only] in extraordinary

circumstances."  Perdue, 559 U.S. at 546; accord Smith & Fuller, P.A. v. Cooper Tire &

Rubber Co., 685 F.3d 486, 490 (5th Cir. 2012); Jimenez, 621 F.3d at 380.  Although the

party seeking attorney's fees bears the initial burden of submitting adequate

documentation of the hours reasonably expended and of the attorney's qualifications and

skill, the party seeking reduction of the lodestar bears the burden of showing that a

reduction is warranted.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Wegner v. Std.

Ins. Co., 129 F.3d 814, 822 (5th Cir. 1997); La. Power & Light Co. v. Kellstrom, 50 F.3d

319, 329 (5th Cir. 1995) (hereinafter "LP&L").

    As a general proposition, all time that is excessive, duplicative or inadequately

documented should be excluded.  Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993).

Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or

6

redundant hours" when seeking fee awards.  <u>Green v. Admin'rs of Tulane Educ. Fund</u>,

284 F.3d 642, 662 (5th Cir. 2002), <u>abrogated in part on other grounds by</u> <u>Burlington N.</u>

<u>& Santa Fe Ry. v. White</u>, 548 U.S. 53, 63-64 (2006) (citing <u>Walker</u>, 99 F.3d at 769);

<u>accord</u> <u>Hensley</u>, 461 U.S. at 433-34.  The fee seeker's attorneys "are charged with the

burden of showing the reasonableness of the hours billed and, therefore, are also charged

with proving that they exercised billing judgment." <u>Saizan</u>, 448 F.3d at 799 (citation

omitted).

      "The proper remedy when there is no evidence of billing judgment is to reduce the

hours awarded by a percentage intended to substitute for the exercise of billing

judgment." <u>Walker</u>, 99 F.3d at 770 (reducing fee award by 15% for lack of billing

judgment) (citing <u>Leroy v. City of Houston</u>, 831 F.2d 576, 586 (5th Cir. 1987) (reducing

award by 13%)); <u>see also</u> <u>Saizan</u>, 448 F.3d 795, 800 (5th Cir. 2006) (10% reduction for

vagueness, duplicative work and lack of billing judgment); <u>Hopwood v. Texas</u>, 236 F.3d

256, 279 (5th Cir. 2000) (25% reduction based on inadequate time entries, duplicative

work product and lack of billing judgment); <u>Coulter v. State of Tenn.</u>, 805 F.2d 146, 151

(6th Cir. 1986) (50% reduction for duplication of effort); <u>Preston Expl. Co., LP v. GSP,</u>

<u>LLC</u>, No. H-08-3341, 2013 WL 3229678, at *9 (S.D. Tex. June 25, 2013) ("Courts have

reduced fees up to 50% for billing judgment in light of factors such as nature and extent

of the work involved, the issues involved, and the complexity of the work;" reducing

hours by 20% because (1) partners performed tasks more suited to associates or

paralegals; (2) attorneys and paralegals billed for clerical tasks; (3) attorneys billed regular rates for unproductive travel time; (4) many billing entries are vague; and (5) case was overstaffed with partners who often duplicated each other's efforts) (citing Saizan, 448 F.3d at 800; LP&L, 50 F.3d at 336; Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC, No. H-10-1568, 2012 WL 3234203, at *8 (S.D. Tex. Aug. 6, 2012) (50% reduction); Devices, Inc. v. Sr. Operations, Inc., No. 3-08-CV-1264-BD, 2009 WL 5171746, at *1 (N.D. Tex. Dec. 29, 2009) (20% reduction)); Harkless v. Brunner, No. 1:06 CV 2284, 2011 WL 2149138, at *2 (N.D. Ohio May 31, 2011) (50% reduction); Yelton v. PHI Inc., No. 09-3144, 2012 WL 3441826, at *8 (E.D. La. Aug. 14, 2012) (50% reduction); Neles-Jamesbury, Inc. v. Bill's Valves, 974 F. Supp. 979, 988 & n.22 (S.D. Tex. 1997) (same).

"If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted." Abrams v. Baylor Coll. of Med., 805 F.2d 528, 535 (5th Cir. 1986) (quotation omitted); accord Phila. Indem. Ins. Co. v. SSR Hospitality, Inc., 459 F. App'x 308, 317 (5th Cir. 2012); Riley v. City of Jackson, 99 F.3d 757, 760 (5th Cir. 1996). "'[H]ours spent in duplicative activity or spent in the passive role of an observer while other attorneys perform [ ]' is generally not recoverable." Coleman v. Houston Indep. Sch. Dist., 202

F.3d 264, 1999 WL 1131554, at *6 (5th Cir. 1999) (quoting Flowers v. Wiley, 675 F.2d 704, 705 (5th Cir. 1982)).

"Moreover, the court need not explicitly calculate the lodestar to make a reasonable award." No Barriers, Inc. v. Brinker Chili's Texas, Inc., 262 F.3d 496, 501 (5th Cir. 2001) (citation omitted).

> The fee applicant . . . must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

Fox v. Vice, 563 U.S. 826, 832 (2011). "If the district court has articulated and clearly applied the correct criteria, [the appeals court] will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." In re High Sulfur Content Gas. Prods. Liab. Litig., 517 F.3d at 228-29 (quotations and citations omitted).

## II.   REASONABLE HOURLY RATES

Plaintiffs seek rates of $250 per hour for the work of their attorneys, William H. Beaumont and Roberto L. Costales. Beaumont states in his declaration under penalty of perjury that he has been a solo practitioner for less than six years, since his admission to the Louisiana bar in October 2010, and has handled cases involving family law, criminal law, personal injury, worker's compensation, discrimination, class actions and the FLSA.

He avers that he currently represents more than 200 plaintiffs in 29 FLSA cases, including six matters in this court that have been certified as collective actions. Beaumont states that the types of cases he accepts rarely allow him to charge an hourly fee.  Thus, he avers that he bases his requested rate on his personal knowledge of attorneys with his level of experience who charge $250 per hour in a family law practice and on a previous award of that rate in another FLSA case in this court.  Plaintiffs' Exh. B, Record Doc. No. 104-5 (citing Plaintiffs' Exh. B-5, final judgment in Carlos Martinez v. Southern Solutions Land Mgmt. LLC et al., C.A. No. 14-2366-H).

Costales states in his declaration under penalty of perjury that he was admitted to the Louisiana bar five years ago, in July 2011, when he started his own law practice, and that he employs one associate.  He avers that he has handled cases involving criminal law, personal injury, worker's compensation, discrimination, class actions and the FLSA. He declares that he currently represents more than 200 plaintiffs in 29 FLSA cases, including the same six certified collective actions as Beaumont.  He bases his requested $250 hourly rate solely on the previous award to him of that rate in Martinez v. Southern Solutions Land Management LLC, the same case cited by Beaumont.  Plaintiff's Exh. C, Record Doc. No. 104-6.

Defendant contests the requested hourly rate and suggests that $175 per hour would be an appropriate rate for both of plaintiffs' lawyers, based on their lack of experience and the excessive number of hours that they billed.  An attorney's requested

hourly rate is prima facie reasonable when he requests that the lodestar be computed at his customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested. LP&L, 50 F.3d at 329. The declarations of plaintiffs' counsel do not establish that $250 per hour is their customary billing rate. The declarations demonstrate only that these attorneys received a $250 per hour fee once, and then only when it was agreed upon between parties to a settlement agreement.

"Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command." Hopwood, 236 F.3d at 281 (quotation omitted); accord U.S. ex rel. Cook-Reska v. Cmty. Health Sys., Inc., No. 15-20312, 2016 WL 873855, at *3 (5th Cir. Mar. 7, 2016); McClain v. Lufkin Indus., Inc., 649 F.3d 374, 381 (5th Cir. 2011). The relevant legal market is where the district court sits. The reasonable hourly rate for a particular community is generally established through affidavits of other attorneys practicing there, not the fee-seeker's attorney. Cook-Reska, 2016 WL 873855, at *3; McClain, 649 F.3d at 381; Thompson v. Connick, 553 F.3d 836, 867-68 (5th Cir. 2008), rev'd on other grounds, 563 U.S. 51 (2011); Tollett v. City of Kemah, 285 F.3d 357, 368 (5th Cir. 2002). "Further, the court need not accept the requested rate–even where it is reasonable and within prevailing market rates–if the court explains why it used a different rate." Cook-Reska, 2016 WL 873855, at *3 (citing Miller v. Raytheon Co., 716 F.3d 138, 149 (5th Cir. 2013);

McClain, 649 F.3d at 381-82; Islamic Ctr. of Miss., Inc. v. City of Starkville, 876 F.2d 465, 468-69 (5th Cir. 1989), overruled on other grounds by Shipes, 987 F.2d at 311).

I find that the requested rate of $250 per hour is excessive for both Beaumont and Costales at this early stage of their careers as FLSA lawyers. The earliest of the six FLSA cases that these two attorneys filed in this district, Martinez v. Southern Solutions Land Management LLC, No. 14-2366-H, was filed less than two years ago, on October 15, 2014, and the first of the instant consolidated lawsuits was filed here a week later. In October 2014, Beaumont had been admitted to the bar for only four years and Costales had been admitted for just over three years. By the time they filed the instant motion for attorney's fees, Beaumont had more than five and Costales had less than five years of experience. Their levels of experience and my review of their time sheets indicates that both attorneys were still developing their knowledge of federal civil procedure and FLSA collective actions during this lawsuit. The judgment in Martinez, in which Beaumont and Costales were awarded an uncontested rate of $250 per hour pursuant to the court-approved settlement agreement between the parties, is not persuasive here, where defendant disputes that requested hourly rate.

In addition, plaintiffs have provided no affidavits from disinterested attorneys regarding customary, reasonable fees charged for FLSA work by lawyers with the limited experience of these lawyers in that field. The declarations of plaintiffs' attorneys alone do not establish the prevailing market rates, particularly when the declarations indicate

that both attorneys have practiced in several other areas of general law practice during their short careers and do not reveal when they began handling FLSA cases or what specialized training, if any, they had in that area. <u>Tollett</u>, 285 F.3d at 368; <u>Gahagan v. U.S. Customs & Border Prot.</u>, No. 14-2619, 2016 WL 3090216, at *14 (E.D. La. June 2, 2016); <u>Haylock v. Ebanks</u>, No. 13-432, 2013 WL 5410463, at *4 (E.D. La. Sept. 25, 2013) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984); <u>Hensley</u>, 461 U.S. at 439 n.15; <u>Sanders v. Wash. Mut. Home Loans, Inc.</u>, No. 05-2166, 2009 WL 365683, at *7 (E.D. La. Feb. 10, 2009)).

I previously awarded attorney's fees to Ashton Marine in the instant case as a discovery sanction. I approved the requested hourly rates of $200 for a lawyer with 19 years[3] of experience in employment law, transportation and insurance defense, and $180 for a first-year associate. Record Doc. No. 80. In these circumstances, I find that a reasonable rate for plaintiffs' attorneys at this time in their careers is $200 per hour, which is at the high end of reasonable rates in the Eastern District of Louisiana for attorneys with the skill and limited years of experience of Beaumont and Costales. <u>See, e.g.</u>, <u>Warder v. Shaw Group, Inc.</u>, No. 09-4191, 2016 WL 3447950, at *2-3 (E.D. La. June 23, 2016) (awarding hourly rates of $325 for a partner with 14 years of experience,

---

[3]My prior order contained a typographical error stating that defendant's lead attorney had 9, rather than 19, years of experience. However, the affidavit submitted with defendant's motion for attorney's fees confirms that lead counsel had been practicing for 19 years and had reduced her rate from her customary $250 per hour to $200 in this case. Record Doc. No. 73-1.

$300 for an associate who nonetheless had 20 years of experience in complex commercial litigation and $130 for a paralegal); Gahagan v. U.S. Customs & Border Prot., No. 14-2619, 2016 WL 3090216, at *14 (E.D. La. June 2, 2016) ($200 per hour for attorney with 8 years of experience in immigration law and Freedom of Information Act cases); Cacho v. Gusman, No. 11-225-SS, 2014 WL 4854737, at *6 (E.D. La. Sept. 29, 2014) ($185 per hour for attorney with 11 years of experience and $150 per hour for attorneys who had practiced for 3 to 5 years); Guity v. Lawson Envtl. Serv., LLC, 50 F. Supp. 3d 760, 768-70 (E.D. La. 2014) (hourly rates of $150 to $175 for associates and $250 to $290 for partners); Alexander v. Ace Am. Ins. Co., No. 14-310, 2014 WL 4163756, at *2 (E.D. La. Aug. 20, 2014) (denying requested rate of $250 and awarding $200 per hour as "at the higher end" of range for attorney with four years of experience); Gros v. New Orleans City, No. 12-2322, 2014 WL 2506464, at *8 (E.D. La. June 3, 2014), reconsideration granted in part on other grounds, 2014 WL 3894371 (E.D. La. Aug. 8, 2014) ($185 per hour for associate who has practiced for 6 years and $185 per hour for associate who has practiced for 5 years); Scott v. Schedler, No. 11-926, 2013 WL 5739070, at *7 (E.D. La. Sept. 20, 2013), report & recommendation adopted, 2013 WL 5739066 (E.D. La. Oct. 22, 2013), aff'd in part, vacated in part on other grounds & remanded, 771 F.3d 831 (5th Cir. 2014) (hourly rates of $175 for associate with 4 years of experience and $200 for associates with 7 or 8 years of experience); Spectrum Commc'n Specialists, LLC v. KMJ Servs., Inc., No. 09-159, 2012 WL 2190806, at *2

14

(E.D. La. June 14, 2012) ($170 per hour for attorney with more than five years of experience).

Perhaps some day when plaintiffs' counsel have amassed the kind of experience in federal procedure, practice and substantive law that enables practitioners to handle their cases efficiently and with a minimum of the kind of fractiousness reflected below, they will be eligible for an award at a higher hourly rate. In my judgment, today is not that day.

III.   <u>REASONABLE HOURS</u>

A.   <u>The Arguments of the Parties</u>

Plaintiffs assert that they obtained "a total win" in this "very contentious" litigation by obtaining a settlement of $70,276.50 for the six class plaintiffs, which represents 100% of the overtime hours worked by plaintiffs at their full overtime rate for the time period allowed by the FLSA. Record Doc. No. 104-1 at p. 1. Plaintiffs seek $145,770.00 in fees for 199 hours worked by Beaumont and 286.9 hours by Costales, for a total of 485.9 hours. Plaintiff's Exh. A-1, Record Doc. No. 104-3. Plaintiffs' counsel contend that their fee statement demonstrates the exercise of billing judgment because Beaumont deducted 44.9 hours, or 18.4 percent of his recorded hours, and Costales deducted 37.4 hours, or 11.5 percent of his recorded hours, for a total deduction of 82.3 hours, or 14.5 percent of the original hours recorded. Those deductions include all the time expended by a paralegal.

15

Ashton Marine does not dispute that plaintiffs are the prevailing parties, but argues that the requested hours are excessive. Defendant notes that the parties took no depositions, exchanged less than 375 documents in discovery and settled this matter five months before trial. Ashton Marine also contends that plaintiffs' counsel's fee statements were not contemporaneously recorded, are unreliable and are insufficient to support plaintiffs' fee request. Finally, defendant asserts that it is not liable for any attorney's fees incurred after January 5, 2016, when the parties reached an agreement to settle plaintiffs' overtime wage claims, because plaintiffs' counsel allegedly agreed not to seek any attorney's fees after the case settled.

I strongly disagree with plaintiffs' characterization of the results of this case as "a total win."[4] I agree, however, that the litigation was "contentious," and note that it was made so in large part by plaintiffs' counsel themselves, perhaps as best reflected in the unprofessional and uncivil e-mails that they frequently exchanged with opposing counsel. See, e.g., Record Doc. No. 112-1, e-mail from Costales to Julie Steed Kammer dated November 17, 2015 (Instead of filing a timely memorandum in opposition to defendants' motion to compel or seeking leave to file a late memorandum, Costales faxed a letter to the court on the day before the scheduled hearing regarding the parties' settlement negotiations and the motion. Record Doc. No. 69. When Kammer questioned the

---

[4]This case was settled, not won. To settle is "to close by compromise and payment of less than full amount claimed or due." Webster's Third New International Dictionary 2079 (Merriam Webster 1981).

professionalism of that tactic, Costales responded: "Save me your silly accusations. It's quickly becoming apparent that your litigation strategy is throwing mud."); Record Doc. No. 112-16 at p. 1, e-mail from Beaumont to Kammer dated January 8, 2016 (After the parties agreed to a settlement amount, Kammer reasonably rejected plaintiffs' counsel's preparation of a consent judgment and their demand that defendants pay the settlement amount in 21 days. Beaumont reacted by stating, "What a joke. Then there is no deal;" demanding that defendants respond to written discovery that day; setting a Rule 37 conference for two business days later if defendants did not; and, that same afternoon, improvidently filing a unilateral motion to approve the settlement that plaintiffs withdrew a few days later. Record Doc. Nos. 83, 90.).

The contentiousness of this litigation continues in the instant motion. Both sides clearly spent an exorbitant amount of time preparing their memoranda and exhibits. The exhibits redundantly and unhelpfully classify and reclassify the hours expended by plaintiffs' attorneys into numerous subcategories.

B.     The Fee Statement Is Adequate for the Court's Review

Ashton Marine argues that the joint fee statement of plaintiffs' counsel, Plaintiffs' Exh. A-1, "contains numerous errors and after-the-fact modifications" that indicate the statement was not contemporaneously maintained and is of questionable veracity. Record Doc. No. 112 at p. 3. Defendant contends that the contemporaneous nature of the joint fee statement is suspect because plaintiffs' counsel are not in the same law firm,

although they share office space; many of counsel's admittedly duplicative time entries are identical, including verbatim typographical and grammatical errors; and counsel billed a total of eight hours at two separate times for preparing the timesheets.

Beaumont and Costales state in their declarations that Exhibit A-1 is a true and correct copy of their contemporaneously kept time records.  These declarations establish the authenticity of the joint fee statement, regardless whether it contains entries recreated from another contemporaneous source.  "'[C]ourts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours,'" but "'[f]ailing to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours.'"  Gagnon v. United Technisource, Inc., 607 F.3d 1036, 1044 (5th Cir. 2010) (quoting LP&L, 50 F.3d at 325) (emphasis added); accord Serna v. Law Ofc. of Joseph Onwuteaka, P.C., 614 F. App'x 146, 158 (5th Cir. 2015), cert. denied, 136 S. Ct. 1160 (2016).

I find that counsel's joint fee statement is adequate for the court's review.  "The remedy for failure to submit bills containing complete details is not preclusion but, rather, reduction of the fees and costs claimed."  Hefren v. Murphy Expl. & Prod. Co., No. 12-1899, 2015 WL 5099133, at *5 (W.D. La. Jan. 20, 2015), report & recommendation adopted, 2015 WL 5123981 (W.D. La. Aug. 27, 2015), aff'd, No. 15-

30923, 2016 WL 1637758 (5th Cir. Apr. 25, 2016) (citing <u>Hensley</u>, 461 U.S. at 433; <u>Von Clark v. Butler</u>, 916 F.2d 255, 259 (5th Cir. 1990)). I therefore address the time entries in more detail and recommend certain reductions below.

      C.     No Agreement that Plaintiffs' Attorneys Would Not Seek Fees After a Settlement in Principle Was Reached

Ashton Marine argues that it is not liable for plaintiffs' attorney's fees incurred after January 5, 2016, when the parties reached an agreement in principle to settle plaintiffs' overtime claims, because plaintiffs' counsel had allegedly agreed two months earlier not to seek any attorney's fees after settlement of the overtime claims. Defendant relies on an e-mail string between its attorney and plaintiffs' attorney Costales on November 17, 2015, in which counsel for each side demanded a definitive settlement number from the other. Defendant's Exh. 1, Record Doc. No. 112-1. Defendant's attorney Kammer asked Costales for a "recapitulation of [your] attorneys fees, and we will decide whether we can settle the case." Costales declined, stating: "We are entitled to 'reasonable' attorneys fees. . . . What is 'reasonable' is up to the judge. . . . <u>As soon as we settle the underlying overtime claims, then they [sic] attorneys' fees stop</u>. Your client pays my clients = no more litigation or attorneys fees." <u>Id.</u> at p. 1 (emphasis in original). Ashton Marine asserts that it relied on this statement when it agreed on January 5, 2016, to a settlement amount for the wage claims and that the amount of attorney's fees would be decided by motion.

Ashton Marine's member/manager, defendant Paul Boudreaux, states in his affidavit in opposition to plaintiffs' motion for attorney's fees that he understood Costales's e-mail statement to be an agreement that Ashton Marine would not be liable for any of plaintiffs' attorney's fees incurred after a settlement was reached. Boudreaux avers that he based his settlement decisions on this understanding and that the idea of putting a stop to the accumulation of plaintiffs' attorney's fees enticed him to agree to a greater settlement amount than he otherwise would have paid. Defendant's Exh. 5, Record Doc. No. 112-15.

The evidence before the court does not corroborate Boudreaux's unilateral understanding that plaintiffs agreed not to seek an award of any attorney's fees incurred after settlement in principle of the wages claims. Costales's e-mail stated the common-sense spur to settlement negotiations that an end to litigation would stop plaintiffs from incurring additional attorney's fees. None of the subsequent communications between the parties that have been entered into the court's record, the parties' representations in motions filed regarding settlement or the court's orders mention any agreement that plaintiffs would not seek recovery of all of their reasonable attorney's fees incurred in this litigation. On the contrary, these documents consistently state that the parties had agreed to settle the amount of wages only and that plaintiffs' attorney's fees would be determined by the court. See Defendant's Exh. 6, Record Doc. No. 112-16 at pp. 3-5 (In an e-mail string dated January 5, 2016, defendants' counsel James Crouch confirmed the

settlement amount with no mention of attorney's fees.  Beaumont responded, confirming

the amount and stating that the parties had agreed that attorney's fees and costs will be

determined by the court.  Beaumont reiterated this in a later e-mail and Crouch thanked

him for the confirmation.); plaintiffs' memorandum in support of Motion to Approve

FLSA Settlement, Record Doc. No. 83-1 at ¶ 12, filed on January 8, 2016 ("The

settlement agreement does not provide for the award of attorney's fees or costs.  The

parties understand, however, that Plaintiffs intend to seek an award of fees and costs from

the Court, or will reach a resolution by agreement without Court intervention.");

defendants' memorandum in support of Motion to Continue Motion to Approve FLSA

Settlement, Record Doc. No. 87-1 at p. 2, filed on January 12, 2016 (The "final terms of

the settlement are not yet completed."  Defendant's attorney presumes that plaintiffs'

counsel will want to negotiate the tax treatment of plaintiffs' recovery.  Defense counsel

will work with plaintiffs' counsel to finalize the settlement documents and submit a joint

motion that addresses the factors for approval of an FLSA settlement.  Attorney's fees

are not mentioned.); Record Doc. No. 98, minute entry for hearing on March 24, 2016

("The issue of attorneys' fees will be deferred and will be handled via motion practice

between the parties."); Record Doc. No. 102, Joint Motion to Approve Settlement at ¶ 12

("The settlement agreement does not provide for the award of attorney's fees or costs.

The parties understand, however, that Plaintiffs intend to seek an award of fees and costs

from the Court, or will reach a resolution by agreement without Court intervention.").

Settlement negotiations and motion practice culminated in Judge Duval signing the parties' proposed order granting their joint motion to approve the settlement on April 15, 2016.  The order states:  "The parties have <u>not</u> reached an agreement regarding the payment of attorney's fees or court costs.  <u>Nothing herein shall impact, impair, diminish, waive, release or bar the Plaintiffs' right to seek and recover attorney's fees</u> and recoverable costs or Defendants' right to oppose Plaintiffs' motion for fees and costs."  Record Doc. No. 103 at p. 1, ¶ 2 (emphasis added).  Accordingly, I find that plaintiffs did <u>not</u> agree that they would not seek an award of their reasonable attorney's fees incurred after January 5, 2016.

In addition, it is settled that a prevailing party under a fee-shifting statute may recover its reasonable attorneys' fees "'for the effort entailed in litigating a fee claim and securing compensation.'"  <u>Payne v. Univ. of S. Miss.</u>, No. 1:12-CV-41-KS-MTP, 2016 WL 698130, at *3 (S.D. Miss. Feb. 19, 2016) (quoting <u>Cruz v. Hauck</u>, 762 F.2d 1230, 1233 (5th Cir. 1985)); <u>accord</u> <u>Alexander v. City of Jackson</u>, 456 F. App'x 397, 400 (5th Cir. 2011); <u>Riley v. City of Jackson</u>, 99 F.3d 757, 760 (5th Cir. 1996); <u>S.M. by & through Tina M. v. St. Tammany Parish Pub. Sch.</u>, No. 14-903, 2016 WL 232436, at *1-2 (E.D. La. Jan. 20, 2016) (citing <u>Cruz</u>, 762 F.2d at 1233; <u>Johnson v. State of Miss.</u>, 606 F.2d 635, 637-38 (5th Cir. 1979); Federal Judicial Center, <u>Awarding Attorneys' Fees and Managing Fee Litigation</u> 33 n.201 (3d ed. 2015)); <u>Lewallen v. City of Beaumont</u>, No.

1:05-CV-733-TH, 2009 WL 2175637, at *8 (E.D. Tex. July 20, 2009), aff'd, 394 F.

App'x 38 (5th Cir. 2010).

      D.    The Reasonable Hours Expended

Plaintiffs seek an award of $121,475.00 in fees for 485.9 hours of attorney time

at $250 per hour.  Although their two attorneys have separate law practices, plaintiffs do

not seek separate awards for each lawyer, but have combined all of the hours worked by

both lawyers on one fee statement.  They request an upward modifier of 20 percent,

raising the total fee request to $145,770.00.

Plaintiffs' request includes an estimated 10 hours for filing a reply brief in support

of their fee application.  However, the court ordered that no reply briefs would be

permitted.  Record Doc. No. 111.  Deducting those 10 estimated hours reduces the

recorded hours to 475.9, and applying the reasonable hourly rate determined above of

$200 to those hours reduces plaintiffs' fee request to $95,180.00.

I have reviewed plaintiffs' fee statement and find that it is generally well

documented.  Plaintiffs' counsel exercised some billing judgment that is evident on the

face of the statement, reducing their claimed time by 14.5 percent overall.  Counsel

acknowledge that the fee statement contains numerous entries reflecting duplicative

work, and they have either deleted or reduced by 50% one of the two duplicative entries

in many cases.  They also reduced to zero some hours they spent on general legal

research of FLSA law and time that they spent on paralegal or clerical tasks.  As

discussed below, I find that their exercise of billing judgment, although an admirable attempt, is inadequate.

Ashton Marine objects that many of the task descriptions on the fee statement are too vague for meaningful review. However, nearly all of the entries that defendant contends are vague on its Exhibit 3-E, Record Doc. No. 112-8, consist of conversations, correspondence or review of correspondence with defense counsel, with most of the entries being for only 0.1 or 0.2 hours (6 or 12 minutes). The court can readily deduce that correspondence with defendant's attorneys is relevant to the instant case without a more particular description. I find that the very brief times spent on these tasks need not be reduced for vagueness.

Defendant acknowledges that plaintiffs' two attorneys reduced the time they spent in meetings and conversations with each other by approximately 48 percent. Ashton Marine argues that plaintiffs' counsel did not similarly reduce 63.7 hours of duplicative time that the two lawyers spent in reading and reviewing the same items. Duplication of effort is not per se unreasonable. Luv N' Care, Ltd v. Groupo Rimar, No. 14-2491, 2015 WL 9463189, at *10 (W.D. La. Dec. 28, 2015) (citing Walker, 99 F.3d at 768). When a matter is staffed with two attorneys, both need to remain aware of the progress of the case. However, given that the instant matter did not involve any novel or complex issues and could have been handled by one experienced attorney, as opposed to two relative novices, I find that some of this duplicative time was unnecessary and that the 63.7 hours

identified by defendant should be reduced by 50 percent to 31.85 hours.  This reduces plaintiffs' fee request from 475.9 hours to 444.05 hours at $200 per hour, for a total of $88,810.00 in fees.

Ashton Marine's Exhibit 3G, Record Doc. No. 112-10, contains a lengthy list of time entries by plaintiffs' counsel for issues that defendant characterizes as wasted, unsuccessful or otherwise excessive.  Federal courts typically deny attorney's fees for unsuccessful, futile or wasteful litigation efforts because such fees cannot be characterized as reasonable.  See, e.g., Montanez v. Simon, 755 F.3d 547, 555 (7th Cir. 2014) (deductions of "wasted" time spent on "fruitless" legal research and drafting untimely discovery requests); Jason D.W. v. Houston Indep. Sch. Dist., 158 F.3d 205, 211 (5th Cir. 1998) (reducing fees for time spent pursuing unsuccessful claim and to reflect limited success on other issues); Randolph v. Dimension Films, 634 F. Supp. 2d 779, 799-800 (S.D. Tex. 2009), aff'd, 381 F. App'x 449 (5th Cir.  2010) (deducting for defendants' counsel's time spent pursuing claims that did not overlap with successful claim, seeking coverage from their insurer, and researching, drafting and preparing to file their answer to plaintiff's complaint, which was never filed).

I find that plaintiffs in the instant matter spent many hours on motions and oppositions to motions on which they were unsuccessful or only partially successful; researching and drafting motions or memoranda that they never filed or that they filed and withdrew; researching routine issues of civil procedure and FLSA law; researching

the discoverability of alias information and the "criminal implications of complying with defendant's discovery requests"[5] (time entries dated 7/16-7/18/15), which is certainly not recoverable from defendant; and preparing and defending discovery requests that I previously found were "obnoxiously over broad and seek irrelevant matter."  Record Doc. No. 72 at p. 2.  In addition, although they are entitled to reasonable fees for preparing their motion for attorney's fees, plaintiffs' counsel spent more than 46 hours (after deducting the estimated 10 hours for preparing a future reply memorandum) doing so, which is an inordinate amount of time.

Not every entry listed on Ashton Marine's Exhibit 3G was as unsuccessful or unnecessary as defendant argues, and some of the wasted or excessive time can be attributed to the inexperience of plaintiffs' counsel, which has already been reflected in their reduced rate of $200 per hour.  Nonetheless, plaintiffs' attorneys expended many hours on excessive, unsuccessful and/or wasted tasks for which defendant should not be required to compensate them.  Without engaging in a line-by-line analysis, I find that the remaining overall requested hours should be reduced by 20 percent to account for excessive, unsuccessful and/or wasted hours and the lack of billing judgment in not deducting such hours.  This reduces the requested 444.05 hours to 355.24 hours at $200

---

[5]Plaintiff Calix was using an alias while working for another employer during the pendency of this litigation.

per hour and yields a lodestar of $71,048.00 in fees.  I find that no further deductions are necessary and that the lodestar is reasonable.

E.     The Johnson Factors

Plaintiffs' request for an upward adjustment of the lodestar based on their success in obtaining the full amount of overtime wages due and allegedly influencing defendant to pay overtime wages to other workers in their situation is unjustified and should be denied.

> [T]here is a strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified.

Perdue, 559 U.S. at 546.  The Supreme Court has "repeatedly said that enhancements may be awarded [only] in 'rare' and 'exceptional' circumstances."  Id. at 552 (quotations and citations omitted).  The strong presumption of reasonableness "may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  Id. at 554.

The Supreme Court treats as one factor whether either the quality of an attorney's performance or the results obtained are factors that may properly provide a basis for an enhancement.

> When a plaintiff's attorney achieves results that are more favorable than would have been predicted based on the governing law and the available evidence, the outcome may be attributable to superior performance and

27

commitment of resources by plaintiff's counsel. Or the outcome may result from inferior performance by defense counsel, unanticipated defense concessions, unexpectedly favorable rulings by the court, an unexpectedly sympathetic jury, or simple luck. Since none of these latter causes can justify an enhanced award, <u>superior results are relevant only to the extent it can be shown that they are the result of superior attorney performance. Thus, we need only consider whether superior attorney performance can justify an enhancement</u>. And in light of the principles derived from our prior cases, we inquire whether there are circumstances in which superior attorney performance is not adequately taken into account in the lodestar calculation. We conclude that there are a few such circumstances but that these circumstances are indeed "rare" and "exceptional," and require specific evidence that the lodestar fee would not have been adequate to attract competent counsel . . . .

<u>Id.</u> (quotation omitted) (emphasis added).

Plaintiffs fail to meet this very high burden. Degree of success obtained is one of several <u>Johnson</u> factors subsumed in the lodestar amount to consider in the district court's "'measured exercise of discretion'" when determining an attorney's fees award. <u>Roussell v. Brinker Int'l</u>, 441 F. App'x 222, 234 (5th Cir. 2011) (quoting <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992)). The performance of plaintiffs' counsel in this action was effective, but cannot be characterized as superior or extraordinary, and the results did not require the overblown amount of litigation activity in which they engaged.

After eliminating the other <u>Johnson</u> factors that are subsumed in the lodestar or prohibited from consideration, only four factors remain for an adjustment analysis: the customary fee, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases. The customary fee that plaintiffs

sought has already been evaluated and rejected above as excessive in establishing a reasonable hourly rate. The nature and length of the professional relationship between plaintiffs and their attorneys appears to be of minimal importance. The case was not undesirable, if properly staffed. Awards in similar cases have already been taken into account above in establishing the hourly rates. Accordingly, I find that the lodestar amount of attorney's fees in the amount of $71,048.00 is reasonable and awardable.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiffs' motion for attorney's fees be GRANTED IN PART AND DENIED IN PART and that defendants, Ashton Marine, LLC and Paul M. Boudreaux, pay to plaintiffs, Carlos Calix, Denis Valladares, Orlando Hernandez, Neri Hernandez, Isaias Castillo, and Lazaro Castro, the amount of $71,048.00 in reasonable attorney's fees, all as detailed above.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[6]

New Orleans, Louisiana, this ___14th___ day of July, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[6]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.